UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CLARENCE RAY WASHINGTON (#111260),

Plaintiff,

CASE NO. 2:11-CV-10448
JUDGE DAVID M. LAWSON
MAGISTRATE JUDGE PAUL J. KOMIVES

v.

CARRON CALDWELL,

Defendant,
_________________________________/

**REPORT AND RECOMMENDATION REGARDING PLAINTIFF'S APRIL 12, 2011 MOTION FOR SUMMARY JUDGMENT (Doc. Ent. 13), DEFENDANT'S APRIL 26, 2011 MOTION FOR SUMMARY JUDGMENT (Doc. Ent. 17) and PLAINTIFF'S SEPTEMBER 9, 2011 MOTION FOR LEAVE TO FILE AMENDED COMPLAINT (Doc. Ent. 27)**

**I. RECOMMENDATION:** The Court should deny plaintiff's April 12, 2011 motion for summary judgment (Doc. Ent. 13), deny defendant's April 26, 2011 motion for summary judgment (Doc. Ent. 17) and grant plaintiff's September 9, 2011 motion for leave to file amended complaint (Doc. Ent. 27).

If the Court agrees with these recommendations, it should also direct the Clerk of the Court to (a) docket plaintiff's proposed first amended complaint (Doc. Ent. 27 at 5-15) as plaintiff's first amended complaint, (b) add Raymond D. Booker and Michael Martin as defendants in this case, and (c) prepare and forward the necessary documents to the U.S. Marshal for service of process upon the newly added defendants.[1]

---

[1]According to the MDOC's website (www.michigan.gov/corrections, "Prisons"), Raymond Booker is the Warden at Ryan Correctional Facility (RRF) in Detroit, Michigan. Based upon his April 25, 2011 affidavit, Michael Martin is "employed by the [MDOC] as the Special Activities Coordinator, Correctional Facilities Administration (CFA), Lansing, Michigan." Doc. Ent. 17-3 ¶ 2.

## II. REPORT:

### A. Background

Clarence Ray Washington (#111260) is currently incarcerated at the Earnest C. Brooks Correctional Facility (LRF) in Muskegon Heights, Michigan.[2] He is serving a life sentence(s) imposed on December 4, 1972 for a June 30, 1972 offense of second degree murder (Mich. Comp. Laws § 750.317) and a July 9, 1972 offense of armed robbery (Mich. Comp. Laws § 750.529). Case Nos. 72-05026 and 72-05013 (Wayne County).[3]

On February 4, 2011, while incarcerated at the Ryan Correctional Facility (RRF) in Detroit, Michigan, Washington filed the instant case against Ms. C. (Carron) Caldwell, described as Chaplain located at RRF. Doc. Ent. 1 at 1-5, Doc. Ent. 12 at 2 (Page 4).[4]

Judge Lawson has referred this case to me to conduct all pretrial matters. Doc. Ent. 7. On March 8, 2011, Assistant Attorney General Allan J. Soros filed an appearance on behalf of defendant Chaplain Carron Caldwell. Doc. Ent. 11.[5]

---

[2]*See* Doc. Ent. 16 (Washington's April 18, 2011 Notice of Address Change).

[3]*See* www.michigan.gov/corrections, "Offender Search."

[4]In addition to the instant case, Washington (#111260) has been a party to several other cases in this Court. *See Washington v. Fitzmaurice, et al.* (Case No. 2:90-cv-71653-GER-VMM); *Washington v. Swift, et al.* (Case No. 2:94-cv-73966-BAF); *Washington v. City of Detroit, et al.* (Case No. 2:05-cv-72433-PDB-MKM); *Washington v. Hutchinson, et al.* (Case No. 5:08-cv-12787-JCO-RSW); and *Washington v. Piper, et al.* (Case No. 5:11-cv-10449-JCO-MKM).

[5]Plaintiff has filed an objection (Doc. Ent. 14) to the appearance of counsel (Doc. Ent. 11). Within this filing, plaintiff also takes issue with defendant Caldwell's failure to respond to plaintiff's January 25, 2011 affidavit (Doc. Ent. 1 at 4-5) attached to the February 4, 2011 complaint (Doc. Ent. 1). Furthermore, plaintiff alleges that defendant has defaulted by her failure to file an answer or otherwise rebut or respond to his complaint. Doc. Ent. 14 at 2.

I note that a waiver of service was sent via mail by the U.S. Marshal to defendant Caldwell on February 23, 2011. Caldwell returned an executed waiver of service. As such, her answer to plaintiff's complaint was due on or about April 25, 2011. *See* Fed. R. Civ. P. 4(d)(3) ("Time to

**B. There Are Three (3) Pending Motions**

**1.** On April 12, 2011, plaintiff filed a motion for summary judgment. Doc. Ent. 13 at 1-6. On August 8, 2011, I entered an order setting the deadline for any response for September 15, 2011. Doc. Ent. 24. Defendant Caldwell filed a response on September 14, 2011. Doc. Ent. 28.

**2.** On April 26, 2011, defendant filed her own motion for summary judgment. Doc. Ent. 17. On May 4, 2011, plaintiff filed a response to defendant's motion. Doc. Ent. 19.

**3.** On September 9, 2011, plaintiff filed a motion for leave to file an amended complaint. Doc. Ent. 27 at 1-4, Doc. Ent. 27 at 5-15 (Proposed First Amended Complaint).

**C. Discussion**

**1. Washington's August 2010 MDOC Grievance (RRF-10-08-00655-20E)**

By a letter dated August 9, 2010, Washington wrote to Chaplain Caldwell regarding a place on the upcoming Ramadan fasting list for August 10, 2010. Doc. Ent. 1 at 6. In a response dated August 10, 2010, Chaplain Caldwell stated, "[a]ccording to CMIS, your faith is other than Islamic. Lansing has required that only those prisoners who have declared Islam as their religion, *e.g.*, Al-Islam, National of Islam, or Moorish Science Temple of American be the only prisoners allowed to observe Ramadan." Doc. Ent. 1 at 7.[6]

---

Answer After a Waiver.") ("[a] defendant who, before being served with process, timely returns a waiver need not serve an answer to the complaint until 60 days after the request was sent--or until 90 days after it was sent to the defendant outside any judicial district of the United States."). Defendant Caldwell filed her motion for summary judgment on April 26, 2011. Doc. Ent. 17.

[6]At the same time, Caldwell provided a similar response to Redonus Early (#373308)). Doc. Ent. 1 at 14. Apparently, Early responded by kiting on or about August 18, 2010. According to Washington, Caldwell's response to Early was "You can fast on your own. I fast on Tuesdays." Doc. Ent. 1 at 13, Doc. Ent. 27 ¶ 13.

On August 20, 2010, plaintiff completed a Step I grievance form, which was received at Step I on August 25, 2010. Doc. Ent. 1 at 8 & 12, Doc. Ent. 9 at 2. Therefore, the Step I grievance response was due on September 15, 2010. Doc. Ent 1 at 12.

On September 21, 2010, plaintiff completed a Step II grievance appeal form, which was received at Step II on September 27, 2010. Doc. Ent. 1 at 9. In the October 21, 2010 Step II Grievance Appeal Response, Warden Raymond D. Booker summarized, in part:

> The computer records indicate that the grievant's religious denomination is Protestant, not Islamic, and also indicate that the grievant is currently scheduled to attend weekly Protestant religious services. Consequently, the grievant will not be placed on callout for an Islamic religious practice, unless he subsequently submits a new Declaration of Religious Preference form (CSJ-177). The grievant is not prohibited from fasting, but may only attend religious activities/services as set forth in the aforementioned policy.

Doc. Ent. 1 at 9-10.

Plaintiff completed a Step III grievance appeal. Doc. Ent. 1 at 9. The December 16, 2010 Step III Grievance Appeal Response upholds the Step II decision. Doc. Ent. 1 at 11.

Eventually, plaintiff received a Step I Grievance Response. The January 29, 2011 Step I Grievance Response by Wright Wade, which was reviewed by Deputy Warden Scott Nobles on January 31, 2011, summarized as follows: "Washington acknowledged he was not of the Muslim faith. It was confirmed the fast was for prisoners of same like faith. There was no violation of policy by not allowing Washington to participate in the fast. He could [have] fasted on his own accord." Doc. Ent. 9 at 3.

**2. Washington's February 4, 2011 Complaint**

In his February 4, 2011 complaint, Washington states that his religious beliefs and practices as a protestant include Ramadan fasting. Washington alleges that Caldwell has violated

the Prisoners Handbook; MDOC PD 03.03.130 ("Humane Treatment and Living Conditions for Prisoners"), the Policy Statement for which provides in part that prisoners "shall not be discriminated against based on race, religion, ethnic background, sex, sexual orientation, gender identity, national origin, or disability[;]"[8] and state and federal law. Washington also claims that Caldwell has violated plaintiff's rights under the First Amendment and has violated MDOC PD 05.03.150 ("Religious Beliefs and Practices of Prisoners"), making specific reference to Paragraphs R, X & XX.[9] Doc. Ent. 1 at 3.

Plaintiff describes four causes of action, among which are mentioned the First, Ninth and Fourteenth Amendments; state and federal law; and MDOC PD 05.03.150. Doc. Ent. 12 at 2. Among plaintiff's requests for relief are compensatory damages, punitive damages and an award of interest and costs. Doc. Ent. 1 at 3. In the affidavit attached to his complaint, plaintiff attests that his request to be placed on the fasting list was so that he could "eat befor[e] the sun comes up and when the sun go[es] down." Doc. Ent. 1 at 4 ¶ 5; *see also* Doc. Ent. 1 at 4-5 (Washington's

---

[8]Elsewhere, this policy provides that "Discrimination based on personal prejudices as to race, religion, color, national origin, age, sex, sexual orientation, gender identity, height, weight, marital status, or disability is prohibited." MDOC PD 03.03.130, ¶ L.

[9]"Prisoners shall be permitted to observe religious fasts that are necessary to the practice of their religion, as approved by the CFA Special Activities Coordinator. A prisoner or group of prisoners who wants to observe a religious fast that has not already been approved by the CFA Special Activities Coordinator must submit a written request to do so to the Warden, FOA Regional Administrator, or designee, as appropriate, which shall include information regarding the religion's beliefs and practices. The Warden, FOA Regional Administrator, or designee shall refer the request and supporting documents to the CFA Special Activities Coordinator through the appropriate chain of command for approval. The CFA Special Activities Coordinator shall present the material to the CAC for additional review, if needed. Approval shall be granted only if the fast is necessary to the practice of a bona fide religion and observance of the fast would not pose a threat to the order and security of the facility. The CFA Special Activities Coordinator shall ensure RPAs, Wardens, and TRV Managers are notified of approved religious fasts, as necessary." MDOC PD 05.03.150, effective Sept. 20, 2007, ¶ XX; *see also* Doc. Ent. 1 at 15-21 (MDOC PD 05.03.150 ("Religious Beliefs and Practices of Prisoners")).

January 25, 2011 Sworn Declaration/Affidavit Against Activities of Violation of [MDOC PD] 05.03.150 and Prisoner[']s First Amen[dment] Rights to Exercise his Religious Beliefs and Practices).

**3. Plaintiff's February 2011 Religious Material**

On February 8, 2011, Washington provided Chaplain Caldwell with a Religious Preference Sheet indicating his choices to attend various Protestant services. Doc. Ent. 17-2 at 16. The February 20, 2011 MDOC Offender Callout Management System Supervisor Report for Protestant Services indicates that Washington was scheduled to attend service from 6 p.m. - 8 p.m. in the gym. Doc. Ent. 17-2 at 17. It appears that Washington signed himself into that scheduled Protestant Primary Service. Doc. Ent. 17-2 at 18.

**4. Plaintiff's April 12, 2011 Motion for Summary Judgment**

In support of his April 12, 2011 motion for summary judgment (*see* Doc. Ent. 13 at 1), plaintiff provides a brief (Doc. Ent. 13 at 2-4), within which plaintiff cites *Perez v. Frank*, 433

F.Supp.2d 955 (W.D. Wis. 2006)[10] and *Cruz v. Beto*, 405 U.S. 319 (1972).[11] Plaintiff also provides an affidavit (Doc. Ent. 13 at 5-6), within which he mentions MDOC PD 01.04.110.[12]

**5. Defendant's April 26, 2011 Motion for Summary Judgment**

In her April 26, 2011 motion, defendant Chaplain Caldwell asserts:

I. Plaintiff, a Protestant, requested and was denied participation in the Muslim fast during Ramadan. MDOC policy provides that a prisoner may only belong and/or participate in one religious group at a time. Chaplain Caldwell is entitled to summary judgment because Plaintiff has not shown a First Amendment violation.

II. A Plaintiff must make a clear showing that each named Defendant was personally involved in the activity that forms the basis of the complaint. Liability under § 1983 must be based on active unconstitutional behavior and cannot be based upon "a mere failure to act." Chaplain Caldwell did not make the decision to deny Plaintiff a religious fast. Plaintiff's claims against Chaplain Caldwell should be dismissed.

---

[10]In *Perez*, with respect to the First Amendment's free exercise clause, the Court noted: "Petitioner contends that he has lost the ability to receive blessings and rewards from Allah as a result of his inability to engage in each of the practices he names. However, he does not indicate whether each of these practices is 'central' to the practice of his religion." *Perez*, 433 F.Supp.2d at 964-965. Ultimately, the Court cautioned: "petitioner should be aware that it will be his burden to demonstrate that respondents' failure to provide him with access to these services and opportunities substantially burdened a belief or practice central to his religion." *Perez*, 433 F.Supp.2d at 965 (citing *Kaufman v. McCaughtry*, 419 F.3d 678, 683 (7th Cir.2005)).

[11]In *Cruz*, the Supreme Court observed "If Cruz was a Buddhist and if he was denied a reasonable opportunity of pursuing his faith comparable to the opportunity afforded fellow prisoners who adhere to conventional religious precepts, then there was palpable discrimination by the State against the Buddhist religion, established 600 B.C., long before the Christian era." *Cruz*, 405 U.S. at 1081. The Supreme Court further explained, "We do not suggest, of course, that every religious sect or group within a prison-however few in number-must have identical facilities or personnel. A special chapel or place of worship need not be provided for every faith regardless of size; nor must a chaplain, priest, or minister be provided without regard to the extent of the demand. But reasonable op[p]ortunities must be afforded to all prisoners to exercise the religious freedom guaranteed by the First and Fourteenth Amendment without fear of penalty." *Cruz*, 405 U.S. at 1082 n.2.

[12]At the same time he filed his motion, plaintiff also filed a reference to MDOC PD 01.04.110 ("Administrative Rules, Policies, and Procedures"). Doc. Ent. 15.

III. Defendant is entitled to Eleventh Amendment and Qualified immunities. Doc. Ent. 17 at 7-10, 10-11, 11-13.

Attached to this motion is defendant RRF Chaplain Carron Caldwell's April 13, 2011 affidavit (Doc. Ent. 17-2 at 2-4). She attests that "[t]he Ramadan fast is a religious activity made available to all Muslim prisoners." Doc. Ent. 17-2 ¶ 6. Caldwell attests that she "forwarded Washington's request to [CFA] Special Activities Coordinator Michael Martin and was informed that since Washington's religious preference was not Muslim, he could not participate in the Ramadan fast." Doc. Ent. 17-2 ¶ 9. Furthermore, Caldwell attests that "[t]o [her] knowledge, Washington has not submitted the required written request and information necessary to observe a fast which is necessary to the practice of the Protestant religion." Doc. Ent. 17-2 ¶ 12. Additionally, Caldwell states that "Washington could have fasted by himself during Ramadan, but without prior approval from the CFA Special Activities Coordinator, Washington would have had to make his own preparations and would not receive any special accommodations from MDOC." Doc. Ent. 17-2 ¶ 13.

Defendant also provides the April 25, 2011 affidavit of Michael Martin, MDOC Special Activities Coordinator (Doc. Ent. 17-3 at 2-5). Martin attests that "Plaintiff . . . has indicated that his religious preference is Protestant. Washington requested to participate in the Ramadan fast which is a religious activity made available to only Muslim prisoners. The Protestant faith does not require participation in the Ramadan fast." Doc. Ent. 17-3 ¶ 6. Additionally, Martin attests that RRF Chaplain Caldwell contacted him "regarding Washington's request and [Martin] informed [Caldwell] that since Washington's religious preference wasn't Muslim, he could not participate in the Ramadan fast." Doc. Ent. 17-3 ¶ 11.

**6. Plaintiff's May 4, 2011 Response**

In his May 4, 2011 filing, plaintiff registers his objections to defendant's April 26, 2011 motion for summary judgment (Doc. Ent. 17), *see* Doc. Ent. 19 at 2-3 ¶¶ 3-10, and his objections to defendant's April 26, 2011 motion to stay discovery (Doc. Ent. 18), *see* Doc. Ent. 19 at 3-4 ¶¶ 11-12. Additionally, plaintiff raises the following, miscellaneous objections:

> Plaintiff objects to the admission of Defendant[']s [April 13, 2011] Affidavit [Doc. Ent. 17-2 at 2-4] where he contends that it was not signed by Carron Caldwell, as he has become familiar with [her] signature over the past few months, and it does not appear to be the same signature which appears on the Affidavit.
>
> Plaintiff objects to this Court[] allowing Defendant to file any pleadings without first responding to his [January 25, 2011] Affidavit [Doc. Ent. 1 at 4-5], [March 23, 2011] Interrogatories [Doc. Ent. 18-1], and [April 12, 2011] Motion for Summary Judgment [Doc. Ent. 13], where Plaintiff[']s refusal to respond would be deemed a "waiver" of his rights and claims.

*See* Doc. Ent. 19 at 4 ¶¶ 13-14. Among other requests for relief, plaintiff seeks an order of this Court requiring Caldwell "to respond to Plaintiff[']s Affidavit, Interrogatories, and Motion for Summary Judgment within five (5) days[.]" Doc. Ent. 19 at 4 ¶ I.

Plaintiff also maintains that MDOC PD 05.03.150 does not say that he "ha[s] to be of the Muslim faith in order to fast during Ramadan." Doc. Ent. 19 at 5. As plaintiff points out, this policy provides in part that "[n]o prisoner shall be discriminated against, or given preferential treatment, because of his/her religious beliefs or practices." MDOC PD 05.03.150, ¶ D. Citing this paragraph, it is plaintiff's position that, "[t]hough a prisoner must be Muslim to participate in Ramadan, there is no policy against Prisoners from different faiths fasting during the same time frame." Doc. Ent. 19 at 6.

**7. Plaintiff's May 13, 2011 Affidavit**

Plaintiff's May 13, 2011 filing, executed on May 10, 2011, is titled, "2nd Affidavit of Facts by Clarence Washington in the Matter of Protestant Religious Beliefs & Practices from the Holy Bible[.]" Therein, plaintiff attests that "his beliefs and practices from the Holy Bible are very true." After citing portions of the Bible, and in reliance on MDOC PD 05.03.150 ("Religious Beliefs & Practices of Prisoners"), plaintiff contends that Protestants, "shall enjoy equal status and protection[,]" and "prison staff shall not discriminate[] against plaintiff[.]" Doc. Ent. 20 at 1.

Also, plaintiff cites the Religious Land Use and Institutionalized Persons Act of 2000 (RLUIPA), 42 U.S.C. §§ 2000cc-2000cc-5; and several cases, including *Gerhardt v. Lazaroff*, 221 F.Supp.2d 827 (S.D. Ohio 2002),[13] *Grace United Methodist Church v. City of Cheyenne*, 235

[13]In *Gerhardt*, Judge Sargus adopted the report and recommendation of Magistrate Judge Kemp. *Gerhardt*, 221 F.Supp.2d at 829-832 (opinion and order), 832-853 (report and recommendation). The Court stated that "RLUIPA does not violate the First Amendment's Establishment Clause." 221 F.Supp.2d at 846. The Sixth Circuit disagreed, stating "the portion of RLUIPA that applies to institutionalized persons-specifically, 42 U.S.C. § 2000cc-1-violates the Establishment Clause." *Cutter v. Wilkinson*, 349 F.3d 257, 260 (6th Cir. 2003). However, the United States Supreme Court later held that "§ 3 of RLUIPA . . . does not, on its face, exceed the limits of permissible government accommodation of religious practices." *Cutter v. Wilkinson*, 544 U.S. 709, 714 (2005).

F.Supp.2d 1186 (D. Wyo. 2002)[14] and *Madison v. Riter*, 240 F.Supp.2d 566 (W.D. Va. 2003).[15]

Doc. Ent. 20 at 1-2.

Furthermore, plaintiff attests:

> Plaintiff is clear in his religious beliefs, practices and Protest[ant] faith of exerci[s]ing his rights to do so by and under the law w[hi]ch protects him. Plaintiff state[s] he is an ordained . . . minister and has been ordained as of [September 30, 1981], and holds a[] degree of Doctor of Motivation, a degree of Doctor of Divinity, a[] degree of Doctor of Religious Science, a[] degree of Doctor of Universal Order, and a masters degree in religion.

Doc. Ent. 20 at 2.

**8. The Court's August 2011 Orders**

On August 10, 2011, I entered an order (Doc. Ent. 25) regarding plaintiff's May 18, 2011 motion to amend the complaint (Doc. Ent. 21). Specifically, my order denied the motion without prejudice to reconsideration if plaintiff submits a proposed amended complaint on or before

---

[14]In *Grace United Methodist Church*, the Court considered Plaintiff's Cross–Motion for Partial Summary Judgment on its First Claim for Relief under the [RLUIPA] and Defendants' Motion for Summary Judgment on Plaintiff's First Claim for Relief, concluding that "[g]enuine issues of material fact exist on all the elements of the Plaintiff's prima facie case under RLUIPA." *Grace United Methodist Church*, 235 F.Supp.2d at 1191-1198, 1198. The Court also considered Defendants' Motion for Summary Judgment on Plaintiff's Second Claim for Relief under 42 U.S.C. § 1983 and the First Amendment (*id*. at 1198-1205) and Defendants' Motion for Summary Judgment on Plaintiff's Third Claim for Relief under 42 U.S.C. § 1983 and the Fourteenth Amendment (*id*. at 1205-1207). Among other things, the Court stated, "Grace United sought to avoid the application of a facially neutral law of general applicability under the veneer of religious exercise without any evidence of discriminatory application. This our Constitution does not permit." *Id*. at 1207.

The Tenth Circuit affirmed. *Grace United Methodist Church v. City of Cheyenne*, 427 F.3d 775 (10th Cir. 2005). However, the Tenth Circuit later issued an opinion on rehearing. *Grace United Methodist Church v. City of Cheyenne*, 451 F.3d 643 (10th Cir. 2006).

[15]*Madison* held that "section 2000cc-1 of RLUIPA, the section of the Act governing the claims of prison inmates, is UNCONSTITUTIONAL as a violation of the Establishment Clause[.]" *Madison*, 240 F.Supp.2d at 582. However, the Fourth Circuit reversed, finding that "Congress can accommodate religion in section 3 of RLUIPA without violating the Establishment Clause[.]" *Madison v. Riter*, 355 F.3d 310, 313 (4th Cir. 2003).

September 15, 2011. My order further provided that defendant may file a brief attacking the legal sufficiency of any such proposed amended complaint within fourteen (14) days of receiving a copy. Doc. Ent. 25 at 3.

That same day, I entered another order (Doc. Ent. 26) granting Caldwell's April 26, 2011 motion to stay discovery (Doc. Ent. 18). This order specifically provided:

> After reviewing the interrogatories sent by plaintiff to defendant, I conclude that the information he sought has been provided by the affidavits not only of defendant Caldwell, which has been briefly summarized above, but also by the affidavit of Special Affairs Coordinator Michael Martin, attached as Exhibit B to the motion for summary judgment (Doc. Ent. 17-3). As noted at the outset of this order, plaintiff may seek leave of court if he believes he needs additional discovery to provide a supplemental response to defendant's motion for summary judgment (Doc. Ent. 17).

Doc. Ent. 26 at 3.

**9. Plaintiff's September 9, 2011 Motion for Leave to Amend his Complaint**

By his September 9, 2011 motion for leave to amend his complaint, plaintiff seeks "to add as defendants Warden Raymond D. Booker, and Michael Martin, and to set forth with particularity his claims of religious discrimination." Doc. Ent. 27 at 1-4. By way of example, plaintiff "states and believes that Warden Booker took part in the decision to deny Plaintiff Washington the right to practice his religion because Plaintiff was Pr[o]testant and the amended complaint sets forth the acts committed by Warden Booker which support[] that claim." Doc. Ent. 27 at 2-3 ¶ 1 . Also, plaintiff claims he "has learned that MDOC Special Acts Coordinator Michael Martin (who is Defendant Caldwell's supervisor) received Plaintiff[']s request to fast but without considering the merits of the request denied the request solely because Plaintiff was an admitted Protestant." Doc. Ent. 27 at 3 ¶ 2.

Attached to his motion is a proposed first amended complaint, wherein plaintiff names as defendants Caldwell, Booker and Martin. Doc. Ent. 27 at 5, 7-8 ¶¶ 4-6. Among other things, the facts underlying plaintiff's proposed first amended complaint discuss plaintiff's July 30, 2010 letter to Caldwell, Caldwell's August 10, 2010 response, plaintiff's subsequent letter to Booker, plaintiff's August 18, 2010 letter to Caldwell, and his August 20, 2010 grievance. Doc. Ent. 27 at 8-12 ¶¶ 7-24.[16] Plaintiff also sets forth claims for relief as to defendants Warden Booker (¶¶ 25-26), Caldwell (¶¶ 27-28) and Martin (¶¶ 29-31). Finally, he sets forth his requests for declaratory judgment, injunctive relief, compensatory damages, punitive damages and costs and fees (¶¶ 32-36). Doc. Ent. 27 at 5-15 (Proposed First Amended Complaint).

**10. Defendant's September 14, 2011 Response**

Caldwell's September 14, 2011 response sets forth three arguments. First, defendant asserts, "Plaintiff, a Protestant, requested and was denied participation in the Muslim fast during Ramadan. MDOC policy provides that a prisoner may only belong and/or participate in one religious group at a time." Caldwell contends she is "entitled to summary judgment because Plaintiff has not shown a First Amendment violation[.]" Doc. Ent. 28 at 8.

Second, defendant asserts, "[a] Plaintiff must make a clear showing that each named Defendant was personally involved in the activity that forms the basis of the complaint. Liability under § 1983 must be based on active unconstitutional behavior and cannot be based upon 'a mere failure to act.' Chaplain Caldwell did not make the decision to deny Plaintiff a religious

[16]Additionally, plaintiff alleges a discrepancy between ¶¶ 9 and 12 of Caldwell's April 13, 2011 affidavit (Doc. Ent. 17-2). Doc. Ent. 27 ¶¶ 22-23.

fast." Caldwell contends "Plaintiff's claims against [her should] be dismissed[.]" Doc. Ent. 28 at 8-9.

Third, defendant asserts, "The Ninth Amendment to the U.S. Constitution does not confer any substantive rights." Caldwell contends that "Plaintiff's claims based upon the Ninth Amendment [should] be dismissed[.]" Doc. Ent. 28 at 9.

**11. Conclusion**

The Court should grant plaintiff's September 9, 2011 motion for leave to file an amended complaint (Doc. Ent. 27) and, accordingly, should deny without prejudice plaintiff's and defendant's earlier filed motions for summary judgment (Doc. Entries 13 and 17).

First, plaintiff's motion for leave to file an amended complaint is unopposed. "A respondent opposing a motion must file a response, including a brief and supporting documents then available." E.D. Mich. LR 7.1(c)(1). Furthermore, "[a] response to a nondispositive motion must be filed within 14 days after service of the motion." E.D. Mich. LR 7.1(e)(2)(B). To date, defendant has not filed any response to plaintiff's September 9, 2011 motion for leave to file an amended complaint (Doc. Ent. 27 at 1-4).

Second, defendant's only filing since then - her September 14, 2011 response (Doc. Ent. 28) to plaintiff's April 12, 2011 motion for summary judgment (Doc. Ent. 13) - does not address plaintiff's proposed first amended complaint (Doc. Ent. 27 at 5-15).[17] Here, I point out that my

---

[17]For example, defendant's September 14, 2011 statement of facts **(a)** appears to refer to the February 4, 2011 complaint's request for $30,000 in compensatory damages and $250,000 in punitive damages (*see* Doc. Ent. 1 at 3), whereas the proposed amended complaint has a different prayer for relief (Doc. Ent. 27 at 14-15), and **(b)** does not mention proposed additional defendants Booker and Martin (*see* Doc. Ent. 27 at 5 and 7-8). Doc. Ent. 28 at 7.

Furthermore, defendant's September 14, 2011 argument apparently refers to her April 26, 2011 motion for summary judgment (Doc. Ent. 17) and plaintiff's April 12, 2011 motion for

August 10, 2011 order invited defendant to file a brief attacking the legal sufficiency of plaintiff's proposed amended complaint within fourteen (14) days of receiving a copy. Doc. Ent. 25 at 3. No such brief was filed.

Third, if the Court agrees with my recommendation as to plaintiff's motion for leave to file an amended complaint, then it would be more appropriate to deny without prejudice plaintiff Washington's and defendant Caldwell's earlier filed motions for summary judgment, direct the Clerk of the Court to file plaintiff's first amended complaint, arrange for the U.S. Marshal to effect service upon Booker and Martin, and have any dispositive motion arguments made and addressed after the filing of plaintiff's first amended complaint and its service upon each defendant.

## III. <u>NOTICE TO PARTIES REGARDING OBJECTIONS</u>:

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sullivan*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Federation of Teachers Local 231, American Federation of Teachers, AFL-CIO*, 829 F.2d

summary judgment (Doc. Ent. 13), each of which pre-dates plaintiff's September 9, 2011 proposed first amended complaint (Doc. Ent. 27 at 5-15). Doc. Ent. 28 at 8-9.

1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

s/Paul J. Komives
PAUL J. KOMIVES
UNITED STATES MAGISTRATE JUDGE

Dated: 2/21/12

The undersigned certifies that a copy of the foregoing order was served on the attorneys of record and by electronic means or U.S. Mail on February 21, 2012.

s/Eddrey Butts
Case Manager