UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CLARENCE RAY WASHINGTON (#111260),

                      Plaintiff,

CASE NO. 2:11-CV-10448
JUDGE DAVID M. LAWSON
MAGISTRATE JUDGE PAUL J. KOMIVES

v.

CARRON CALDWELL,
RAYMOND BOOKER and
MICHAEL MARTIN

                      Defendants,
_____/

**REPORT AND RECOMMENDATION REGARDING
DEFENDANTS BOOKER AND MARTIN'S APRIL 5, 2013 MOTION FOR SUMMARY
JUDGMENT (Doc. Ent. 59) and PLAINTIFF WASHINGTON'S APRIL 25, 2013
MOTION FOR SUMMARY JUDGMENT (Doc. Ent. 61)**

**I.**    **RECOMMENDATION:** The Court should grant defendants Booker and Martin's April 5, 2013 motion for summary judgment (Doc. Ent. 59) and deny plaintiff Washington's April 25, 2013 motion for summary judgment (Doc. Ent. 61).

**II.**    **REPORT:**

**A.**    **This case was originally filed on February 4, 2011 against RRF Chaplain Caldwell.**

Clarence Ray Washington (#111260) was paroled on May 7, 2013.[1] He currently resides in Hamtramck, Michigan. Doc. Ent. 64 (Notice of Change of Address/Contact Information).

---

[1] *See* Doc. Ent. 63 (Notice of Change of Address/Contact Information); www.michigan.gov/corrections, "Offender Search."

On February 4, 2011, while incarcerated at the Ryan Correctional Facility (RRF) in Detroit, Michigan, Washington filed the instant case against Ms. C. (Carron) Caldwell, described as a Chaplain located at RRF. Doc. Ent. 1 at 1-5, Doc. Ent. 12 at 2 (Page 4).[2]

**B.    The March 12, 2012 First Amended Complaint Was Filed against RRF Chaplain Caldwell, as well as RRF Warden Booker and MDOC CFA Special Activities Coordinator Martin.**

Early on, Judge Lawson referred this case to me to conduct all pretrial matters. Doc. Ent. 7.[3] On February 21, 2012, I entered a report (Doc. Ent. 29) recommending that the Court deny plaintiff's April 12, 2011 motion for summary judgment (Doc. Ent. 13), deny defendant's April 26, 2011 motion for summary judgment (Doc. Ent. 17) and grant plaintiff's September 9, 2011 motion for leave to file amended complaint (Doc. Ent. 27).

On March 12, 2012, Judge Lawson entered an order (Doc. Ent. 30) adopting my report and recommendation (Doc. Ent. 29), denying defendant Caldwell's motion for summary judgment

---

[2] In addition to the instant case, Washington (#111260) has been a party to several other cases in this Court. *See, i.e., Washington v. Fitzmaurice, et al.* (Case No. 2:90-cv-71653-GER-VMM); *Washington v. Swift, et al.* (Case No. 2:94-cv-73966-BAF); *Washington v. City of Detroit, et al.* (Case No. 2:05-cv-72433-PDB-MKM); *Washington v. Hutchinson, et al.* (Case No. 5:08-cv-12787-JCO-RSW); and *Washington v. Piper, et al.* (Case No. 5:11-cv-10449-JCO-MKM).

[3] On March 8, 2011, Assistant Attorney General Allan J. Soros filed an appearance on behalf of defendant Chaplain Carron Caldwell. Doc. Ent. 11. Plaintiff has filed an objection (Doc. Ent. 14) to the appearance of counsel (Doc. Ent. 11). Within this filing, plaintiff also takes issue with defendant Caldwell's failure to respond to plaintiff's January 25, 2011 affidavit (Doc. Ent. 1 at 4-5) attached to the February 4, 2011 complaint (Doc. Ent. 1). Furthermore, plaintiff alleges that defendant has defaulted by her failure to file an answer or otherwise rebut or respond to his complaint. Doc. Ent. 14 at 2.
   I note that a waiver of service was sent via mail by the U.S. Marshal to defendant Caldwell on February 23, 2011. Caldwell returned an executed waiver of service. As such, her answer to plaintiff's complaint was due on or about April 25, 2011. *See* Fed. R. Civ. P. 4(d)(3) ("Time to Answer After a Waiver.") ("[a] defendant who, before being served with process, timely returns a waiver need not serve an answer to the complaint until 60 days after the request was sent--or until 90 days after it was sent to the defendant outside any judicial district of the United States."). Defendant Caldwell filed her motion for summary judgment on April 26, 2011. Doc. Ent. 17.

(Doc. Ent. 17), denying plaintiff's motion for summary judgment (Doc. Ent. 13), granting plaintiff's motion to file amended complaint (Doc. Ent. 27), and directing the U.S. Marshal to effect service.

At the same time, the Clerk of the Court docketed plaintiff's first amended complaint against RRF Chaplain Carron Caldwell, RRF Warden Raymond D. Booker and Correctional Facilities Administration (CFA) Special Activities Coordinator Michael Martin. Doc. Ent. 31 ¶¶ 4-6. Plaintiff describes his first amended complaint as based upon 42 U.S.C. § 1983, the Religious Freedom Restoration Act of 1993 (RFRA) (42 U.S.C. §§ 2000bb - 2000bb-4); and the Religious Land Use and Institutionalized Persons Act of 2000 (RLUIPA) (42 U.S.C. §§ 2000cc - 2000cc-5). Doc. Ent. 31 at 1. Plaintiff alleges that he is a Protestant who "considers fasting an integral part of his religious practice[,]" in accordance with Matthew 4:1-2.[4] Doc. Ent. 31 at 1-2, Doc. Ent. 31 at 4 ¶ 8. According to plaintiff, the MDOC has "set aside a 31 day period of each year where prisoners observing religious fasts are accommodated[,]" and "the fasting period is scheduled to coincide with the Muslim month of Ramadan[.]" For more than thirty-five (35) years, plaintiff contends, "Plaintiff and other non-Muslim prisoners have partaken of the fast." Doc. Ent. 31 at 2. Plaintiff claims that he submitted a written request in accordance with MDOC PD 05.03.150 ¶ XX; however, "Defendants rejected [hi]s request without making any determination as to whether Plaintiff was fasting in accordance with a religious belief or practice,

---

[4]"Then was Jesus led up of the Spirit into the wilderness to be tempted of the devil. And when he had fasted forty days and forty nights, he was afterward hungry." King James version, as quoted at B i b l e G a t e w a y . c o m , <<http://www.biblegateway.com/passage/?search=Matthew+4%3A1-11&version=KJV>>.

but instead denied the request solely on the basis of Plaintiff['s] religious denomination[.]" Doc. Ent. 31 at 2. In the operative paragraphs of his amended complaint, plaintiff alleges:

8.  Plaintiff Washington sent to Warden Booker and Defendant Caldwell a request for an accommodation to fast in observance of Matthew 4:1&2, wherein it is written that Jesus did fast for 40 days and 40 nights[.]

9.  On, or about July 30, 2010, Plaintiff Washington wrote to Defendant Caldwell, the prison's chaplain explaining his religious beliefs and his desire to be placed on the list of prisoners who would be fasting during the 31 days of Ramadan.[5]

10. On August 10, 2010, Defendant Caldwell responded with a memo stating: "According to CMIS, your faith is other than Islamic. Lansing has required that only those prisoners who have declared Islam as their religion, e.g., Al Islam, Nation of Islam, or Moorish Science Temple of America be the only prisoners allowed to observe Ramadan."[6]

11. Plaintiff Washington then wrote to Warden Booker explaining his religion, his desire to fast, and the importance of fasting to his religious beliefs. Plaintiff requested the Warden order him placed on the list of prisoners who would be fasting during the month of Ramadan, but Defendant Warden did not order Plaintiff placed on the list, nor did the Warden forward Plaintiff's request to CFA Coordinator Michael Martin as is required by PD 05.03.150.

12. Plaintiff Washington continually sought approval and had several verbal discussions with Defendant Caldwell who continued to insist she would only place Muslims on the fasting list. Caldwell was unable to provide any MDOC policy to support her action.

13. On August 18, 2010, Plaintiff Washington again wrote Defendant Caldwell (in accordance with PD 05.03.150) explaining the importance of fasting to his religious practices. In her response Defendant Caldwell wrote: "You can fast on your own. I fast on Tuesdays."

---

[5] By a letter dated August 9, 2010, Washington wrote to Chaplain Caldwell regarding a place on the upcoming Ramadan fasting list for August 10, 2010. Doc. Ent. 1 at 6.

[6] *See* Doc. Ent. 1 at 7. At the same time, Caldwell provided a similar response to Redonus Early (#373308)). Doc. Ent. 1 at 14. Apparently, Early responded by kiting on or about August 18, 2010. According to Washington, Caldwell's response to Early was "You can fast on your own. I fast on Tuesdays." Doc. Ent. 1 at 13, Doc. Ent. 27 ¶ 13.

> 14. Neither Defendant Warden or Defendant Caldwell made any attempt to determine whether or not fasting for Plaintiff Washington was a religious practice, but made their dispositions based entirely upon the fact that the practice would not be allowed because Plaintiff was Protestant.

Amended Compl., ¶¶ 9-14. Plaintiff then alleges that Martin "is the CFA Special Activities Coordinator, as set forth in [MDOC] PD 05.03.150, and as such, had a duty to review Plaintiff's request on the merits, but did breach that duty, and did claim to have never received any request from Plaintiff." Doc. Ent. 31 ¶ 21.[7]

The claims for relief allege that Booker failed to comply with MDOC PD 05.03.150 ("Religious Beliefs and Practices of Prisoners") and violated plaintiff's First Amendment rights (¶¶ 25-26); Caldwell failed to comply with MDOC PD 05.03.150 and Caldwell violated plaintiff's First Amendment rights (¶¶ 27-28);[8] and Martin violated plaintiff's First Amendment rights (¶¶ 29-31). Plaintiff Washington seeks declaratory, injunctive, compensatory and punitive relief, as well as an award of costs and fees. Doc. Ent. 31 ¶¶ 32-36.

**C.     The Claims Against RRF Chaplain Caldwell Were Dismissed on March 22, 2013.**

---

[7]Additionally, plaintiff alleges a discrepancy between ¶¶ 9 and 12 of Caldwell's April 13, 2011 affidavit (Doc. Ent. 17-2). Doc. Ent. 27 ¶¶ 22-23. Specifically, Caldwell attested that she "forwarded Washington's request to [CFA] Special Activities Coordinator Michael Martin and was informed that since Washington's religious preference was not Muslim, he could not participate in the Ramadan fast." Doc. Ent. 17-2 ¶ 9. Also, Caldwell attested that, "[t]o [her] knowledge, Washington has not submitted the required written request and information necessary to observe a fast which is necessary to the practice of the Protestant religion." Doc. Ent. 17-2 ¶ 12.

[8]Here, the Court notes plaintiff's April 25, 2013 reference to MDOC PD 01.04.110 ("Administrative Rules, Policies and Procedures"), effective July 1, 2007. In part, this policy provides that "[n]on-compliance with Department policy may leave the Department liable and employees vulnerable to prosecution and civil suit, as well as disciplinary action." Doc. Ent. 61 at 33.

On January 31, 2013, I entered a report (Doc. Ent. 48) recommending that the Court grant defendant Caldwell's motion for summary judgment (Doc. Ent. 32) and deny plaintiff's motion for summary judgment (Doc. Ent. 40).

On March 22, 2013, Judge Lawson entered an opinion and order (Doc. Ent. 56) adopting report and recommendation (Doc. Ent. 48), denying plaintiff's motion for summary judgment (Doc. Ent. 40), granting defendant Caldwell's motion for summary judgment (Doc. Ent. 32) and dismissing claims against defendant Carron Caldwell only.

**D.    The Two (2) Pending Motions are Remaining Defendants Booker and Martin's Motion for Summary Judgment and Plaintiff's Cross-Motion for Summary Judgment**.

**1.**    On April 5, 2013, defendants Booker and Martin filed a motion for summary judgment. Doc. Ent. 59.[9] Therein, Booker and Martin put forth arguments regarding (I) exhaustion under 42 U.S.C. § 1997e(a); (II) Washington's failure to show Booker's personal involvement as required by 42 U.S.C. § 1983; (III) Washington's failure to show a First Amendment violation; (IV) Eleventh Amendment and qualified immunities; and (V) the mootness of plaintiff's claims for injunctive and declaratory relief. Doc. Ent. 59 at 8-21.[10]

---

[9]On April 5, 2013, Assistant Attorney General Allan J. Soros filed an appearance on behalf of Raymond Booker and Michael Martin. Doc. Ent. 58.

[10]Among the attachments to defendants' motion are MDOC PD 03.02.130 ("Prisoner/Parolee Grievances"), effective July 9, 2007 (Doc. Ent. 59-2); an MDOC Prisoner Step III Grievance Reports for 1999-June 2009 and for May 2009 to Present (Doc. Ent. 59-3); and MDOC Grievance RRF-10-08-00655-20e (Doc. Ent. 59-4).

**2.** On April 11, 2013, I entered an order (Doc. Ent. 60) requiring any response by plaintiff to be filed on or before May 28, 2013. On April 25, 2013, plaintiff Washington filed a motion for summary judgment. Doc. Ent. 61 at 1-17, 30-32.[11]

**E. The Court Should Grant Defendants Booker and Martin's Motion (Doc. Ent. 59) and Deny Plaintiff's Motion (Doc. Ent. 61).**

**1. Washington's MDOC Grievance RRF-10-08-00655-20E, initiated on August 20, 2010, does not exhaust his administrative remedies with respect to his claims against Booker and Martin.**

**a. Prisoners must exhaust available administrative remedies before bringing a lawsuit which challenges prison conditions:** Specifically, "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C.A. § 1997e(a) ("Applicability of administrative remedies").

In *Woodford v. Ngo*, 548 U.S. 81 (2006), the United States Supreme Court considered "whether a prisoner can satisfy the Prison Litigation Reform Act's exhaustion requirement, 42

---

[11]*See also* Doc. Ent. 61 at 18 (List of Exhibits). Among the attachments to plaintiff's filing are a Statement of Facts and Evidence from the King James Version (KJV) of the Bible (Doc. Ent. 61 at 19-20); Bible excerpts (Doc. Ent. 61 at 21-29); MDOC PD 01.04.110 ("Administrative Rules, Policies and Procedures") (Doc. Ent. 61 at 33); a July 3, 2012 MDOC Memorandum from Raymond Schuh, Food Service Director at Chippewa Correctional Facility (URF), to prisoners participating in Ramadan (Doc. Ent. 61 at 34); a July 18, 2012 MDOC Memorandum from James Bolton, Chaplain at URF, to plaintiff Washington (Doc. Ent. 61 at 35); plaintiff Washington's August 20, 2010 Step I grievance in RRF-10-08-00655-20e (Doc. Ent. 61 at 36); plaintiff Washington's September 21, 2010 Step II grievance appeal in RRF-10-08-00655-20e (Doc. Ent. 61 at 37); Warden Booker's October 21, 2010 Step II grievance appeal response (Doc. Ent. 61 at 38); the December 16, 2010 Step III grievance appeal response (Doc. Ent. 61 at 39); an MDOC Prisoner Step III Grievance Report for May 2009 to Present (Doc. Ent. 61 at 40); and my February 21, 2012 report and recommendation (Doc. Ent. 29) (Doc. Ent. 61 at 41). Also, on May 2, 2013, plaintiff filed Exhibit 8 - Macomb Correctional Facility (MRF) Operating Procedure (OP) 05.03.150, effective January 1, 2009 (Doc. Ent. 62).

U.S.C. § 1997e(a), by filing an untimely or otherwise procedurally defective administrative grievance or appeal[,]" and held that "***proper*** exhaustion of administrative remedies is necessary." *Woodford*, 548 U.S. at 83-84 (emphasis added). The Supreme Court explained that "[p]roper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Id.* at 90-91. In other words, "the PLRA exhaustion requirement requires proper exhaustion." *Id*. at 93. The following year, in *Jones v. Bock*, 549 U.S. 199 (2007), the Supreme Court explained:

> In *Woodford*, we held that to properly exhaust administrative remedies prisoners must "complete the administrative review process in accordance with the applicable procedural rules," - rules that are defined not by the PLRA, but by the prison grievance process itself. ***Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to "properly exhaust."*** The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion.

*Jones*, 549 U.S. at 218 (internal citations omitted) (emphasis added).

**b.     Plaintiff's claims for relief against RRF Warden Booker and MDOC CFA Special Activities Coordinator Martin concern the denial of plaintiff's request to participate in fasting during Ramadan 2010:** Plaintiff claims that Booker breached his duty under MDOC PD 05.03.150 "by failing to forward Plaintiff's request, and thereby was the cause, or proximate cause of Plaintiff['s] request not being heard on the merits which resulted in the discriminatory denial." Doc. Ent. 31 ¶ 25. Plaintiff also claims that Booker "knew through Plaintiff's letters, and grievance that Plaintiff was being discriminated against because of his religion and did approve and sanction that discrimination in violation of Plaintiff[']s First Amendment rights[.]" Doc. Ent. 31 ¶ 26.

Plaintiff's claims against Martin take issue with the level of consideration he gave to the request. Specifically, plaintiff states:

> 29. That Defendant Michael Martin received a request from Plaintiff to participate in the prison's month of fasting, but denied receiving the request causing Plaintiff to be denied the right to participate in the month of fasting in violation of the First Amendment.
>
> 30. That Defendant Michael Martin received a request from Plaintiff to be accommodated because he wished to fast during the month of August 2010, but Defendant Martin discriminated against Plaintiff for the sole reason that Plaintiff is Protestant, and refused to approve Plaintiff solely for the reason Plaintiff was not Muslim violating Plaintiff's rights under the First Amendment of the US Constitution.
>
> 31. That Plaintiff was denied his [F]irst Amendment right to practice his religion when Defendant Michael Martin did not fairly consider Plaintiff's religious request, but dismissed the request for no other reason than Plaintiff's stated religion.

Doc. Ent. 31 ¶¶ 29-31.

**c.     Plaintiff Washington initiated RRF-10-08-00655-20e on August 20, 2010 and pursued it through Step III of the grievance process:** The Michigan Department of Corrections relevant policy directive is MDOC PD 03.02.130 ("Prisoner/Parolee Grievances"), the policy statement for which is "[p]risoners and parolees shall be provided with an effective method of seeking redress for alleged violations of policy and procedure or unsatisfactory conditions of confinement." *Id.*, effective July 9, 2007.

Among other things, MDOC PD 03.02.130 describes a three (3) step grievance process. *Id.* ¶¶ V-AA (Step I), BB-EE (Step II) & FF-GG (Step III). Plaintiff's August 20, 2010 Step I grievance form states:

> I did talk with Chaplain Caldwell and she told [me] I can[not] Ramadan fast per her and CMIS [Corrections Management Information System].

9

> The Hol[y] Bible Teach[e]s to fast, our Lord Jesus Christ also Ramadan Fast[ed] for 30 days[.] If any[one] knows the Bible it w[i]ll tell you how Jesus went up in the [mountain] and fast[ed] for 30 day[s] and talk[ed] to the b[ur]ning bush. This is a violation of my con[stitutional] rights under my religion, and also my faith do[es] not have a thing to do with me fasting. What she has done she can[not] undo it.
>
> See the attach[ed] Statement of Facts[,] dat[e]d 8-11-10[.]

Plaintiff's grievance was received at Step I on August 25, 2010. Doc. Ent. 1 at 8 & 12, Doc. Ent. 9 at 2, Doc. Ent. 59-4 at 5, Doc. Ent. 61 at 36. Therefore, the Step I grievance response was due on September 15, 2010. Doc. Ent 1 at 12.

On September 21, 2010, plaintiff completed a Step II grievance appeal form, which was received at Step II on September 27, 2010. Therein, plaintiff stated:

> . . . I have not received [a] response nor an extension. However[,] Chaplain Caldwell is in violation of PD 05.03.150[.] She told me I could not exercise my religious beliefs like the other religious groups, such as the [MSTA], Al-Islam, the Nation of Islam, e.g., by Ramadan fasting. She states according to CMIS my faith is not Islamic. So[,] she will not put me on the list to Ramadan fast along with the other relig[i]on groups. My religion book[,] the Holy Bible[,] is very clear on the fasting[.] Jesus fast[ed][.] *See* Matthew 4:1 and 2[.] The Chaplain Caldwell is in violation of my First Amen[dment] rights. As a Chaplain[,] she know[s] or should know this is a violation.

Doc. Ent. 1 at 9; Doc. Ent. 59-4 at 3. In the October 21, 2010 Step II Grievance Appeal Response, Warden Raymond D. Booker summarized, in part:

> The computer records indicate that the grievant's religious denomination is Protestant, not Islamic, and also indicate that the grievant is currently scheduled to attend weekly Protestant religious services. Consequently, the grievant will not be placed on callout for an Islamic religious practice, unless he subsequently submits a new Declaration of Religious Preference form (CSJ-177). The grievant is not prohibited from fasting, but may only attend religious activities/services as set forth in the aforementioned policy.

Doc. Ent. 1 at 9-10; Doc. Ent. 59-4 at 3-4.

Plaintiff completed a Step III grievance appeal. According to plaintiff:

10

> The day all the religious group[s] fast[] is a date s[e]t by the prison because of the way and time the prison feed[s] all the inmates who [are] fasting, such as the prison feeds all the men who ask to be put on the list of the men who [are] fasting will be put on call out to eat before the sun comes up and eat when the sun go[e]s down. *See* Matthew 4:1 to 2[.] Jesus did fast for 40 days and 40 nights[.] This is our religious belief[] and practices as a Protest[a]nt[.]

Doc. Ent. 1 at 9; Doc. Ent. 59-4 at 3. The December 16, 2010 Step III Grievance Appeal Response upholds the Step II decision. Doc. Ent. 1 at 11; Doc. Ent. 59-4 at 2.

Eventually, plaintiff received a Step I Grievance Response. Doc. Ent. 9 at 2-3. The January 29, 2011 Step I Grievance Response by Inspector Wright Wade, which was reviewed by Deputy Warden Scott Nobles on January 31, 2011, summarized as follows: "Washington acknowledged he was not of the Muslim faith. It was confirmed the fast was for prisoners of same like faith. There was no violation of policy by not allowing Washington to participate in the fast. He could [have] fasted on his own accord." Doc. Ent. 9 at 3.

**d.     Defendants Booker and Martin argue that plaintiff's complaint against them should be dismissed, because plaintiff Washington "did not file a grievance regarding his Complaint allegations against any Defendant." Doc. Ent. 59 at 8-12.** Specifically, defendants Booker and Martin argue that "Washington has not properly exhausted his Amended Complaint allegations as to Warden Booker or Chaplain Martin because he did not properly complete the grievance process regarding those issues raised in his Complaint." Doc. Ent. 59 at 11-12.

**e.     To be sure, it appears that the only grievance relevant to the claims in plaintiff's first amended complaint is RRF-10-08-00655-20e:** Defendants have provided an MDOC Prisoner Step III Grievance Report which indicates that Washington filed the following six (6) Step III grievances while at RRF: RRF-08-02-00133-12d1 (initiated at Step I on February 22, 2008 and returned from Step III on September 16, 2008); RRF-09-06-00445-02c (initiated at Step I on June

11

18, 2009 and returned from Step III on April 30, 2010); RRF-10-05-00343-02a (initiated at Step I on May 7, 2010 and returned from Step III on September 21, 2010); RRF-10-06-00437-02c (initiated at Step I on June 9, 2010 and returned from Step III on October 8, 2010); RRF-10-08-00655-20e (initiated at Step I on August 12 or 25, 2010 and returned from Step III on December 20, 2010); and RRF-11-03-00190-12i (initiated at Step I on March 3, 2011 and returned from Step III on July 5, 2011). *See* Doc. Ent. 59-3 at 4-6.

The facts underlying plaintiff's March 12, 2012 first amended complaint took place during July and August 2010. *See* Doc. Ent. 31 ¶¶ 7-14. Of the aforementioned grievances, only RRF-10-08-00655-20e was initiated during the time period relevant to plaintiff's first amended complaint against Booker and Martin.

Relying upon RRF-10-08-00655-20e (Doc. Ent. 61 at 36-41), plaintiff points out that he exhausted all three (3) steps of the grievance procedure. Doc. Ent. 61 at 30 ¶¶ 1-3. And, an attachment to his April 5, 2013 filing emphasizes RRF-10-08-00655-20e. *See* Doc. Ent. 61 at 40.

For these reasons, the Court will assume that plaintiff is relying solely upon RRF-10-08-00655-20e in opposition to defendants' Booker and Martin's argument that plaintiff has not exhausted his administrative remedies with regard to plaintiff's claims against them.

**f.      RRF-10-08-00655-20e, while pursued through Step III of the MDOC's grievance process, does not exhaust plaintiff's administrative remedies with regard to his claims against Booker and Martin:** With regard to the grievance process, MDOC PD 03.02.130 provides, in part, that "[d]ates, times, places, and names of all those involved in the issue being grieved are to be included." *Id*. ¶ R. As defendants Booker and Martin point out, "[n]owhere in th[e] [August 2010] Step I grievance [RRF-10-08-00655-20e] does Washington name Warden

Booker or Chaplain Martin despite the requirement that the names of all those involved in the issue being grieved are to be included." Doc. Ent. 59 at 12.

In other words, RRF-10-08-00655-20e only grieves defendant Caldwell.

**g.   Perhaps plaintiff Washington would argue that he was not aware of his claims against RRF Warden Booker or MDOC CFA Special Activities Coordinator Martin at the time plaintiff filed his August 2010 grievance.**  For example, within her April 26, 2011 dispositive motion, former defendant Caldwell explained that she "did not have the authority to approve Washington's request[.]" Doc. Ent. 17 at 11.  Approximately one (1) week later, in his May 4, 2011 response, plaintiff stated that Martin was not a defendant in this matter but also asserted that "[i]f Defendant feels that Ms. Caldwell is the wrong Defendant, then he respectfully asks this Court to allow him to Amend his Complaint to add or substitute Michael Martin as a Defendant." Doc. Ent. 19 ¶¶ 7-8.  Then, by his May 18, 2011 motion to amend, plaintiff sought to add Martin as a defendant.  Doc. Ent. 21.  Thereafter, in his June 3, 2011 filing, plaintiff explains that "but for a mistake concerning the identity of the proper parties, the action woul[d] have been brought against Mr. Martin from the beginning." Doc. Ent. 23 ¶ 7.  Indeed, it was by plaintiff's September 9, 2011 motion for leave to file an amended complaint that plaintiff sought the Court's permission to add Booker and Martin as defendants.  Doc. Ent. 27 at 1-4 (Motion); *see also* Doc. Ent. 27 at 5-15 (Proposed First Amended Complaint).

**h.   Nonetheless, Booker and Washington's roles and/or identities were not or should not have been a mystery at the time plaintiff filed his August 20, 2010 grievance:**  Certainly, as an RRF inmate, Washington knew or should have known that Booker was RRF's Warden. Plaintiff's first amended complaint mentions letters and requests to Warden Booker and/or

Chaplain Caldwell (Doc. Ent. 31 ¶¶ 8-14) which occurred in advance of plaintiff's August 20, 2010 grievance (Doc. Ent. 31 ¶ 15).  Therefore, to the extent plaintiff's claims against Booker are related to matters which took place before plaintiff initiated the grievance process on August 20, 2010, plaintiff had the information he needed to grieve Booker.

Also, at the time plaintiff filed his August 20, 2010 grievance (Doc. Ent. 59-4 at 5), he had the information he needed to grieve MDOC CFA Special Activities Coordinator Martin, at least by title.  This is so, because plaintiff's August 9, 2010 letter to Caldwell cites MDOC PD 05.03.150, specifically referencing ¶¶ R, X and XX, presumably of the September 20, 2007 version of the policy.  *See* Doc. Ent. 1 at 6, Doc. Ent. 17-2 at 6-14.  By way of background, Religious Menus/Meals are discussed at ¶¶ OO-YY.  Within this section, ¶ XX states:

> Prisoners shall be permitted to observe religious fasts that are necessary to the practice of their religion, as approved by the *CFA Special Activities Coordinator*. A prisoner or group of prisoners who wants to observe a religious fast that has not already been approved by the *CFA Special Activities Coordinator* must submit a written request to do so to the *Warden*, FOA [Field Operations Administration] Regional Administrator, or designee, as appropriate, which shall include information regarding the religion's beliefs and practices.  The *Warden*, FOA Regional Administrator, or designee shall refer the request and supporting documents to the *CFA Special Activities Coordinator* through the appropriate chain of command for approval.  The *CFA Special Activities Coordinator* shall present the material to the CAC [Chaplaincy Advisory Council] for additional review, if needed.  Approval shall be granted only if the fast is necessary to the practice of a bona fide religion and observance of the fast would not pose a threat to the order and security of the facility.  The *CFA Special Activities Coordinator* shall ensure RPAs [Regional Prison Administrators], *Wardens*, and TRV [Technical Rule Violation center] Managers are notified of approved religious fasts, as necessary.

Doc. Ent. 17-2 at 12 (emphasis added).[12]  Therefore, at the time plaintiff filed his August 20, 2010 grievance (Doc. Ent. 59-4 at 5), he had specifically referenced ¶ XX of the September 20, 2007 version of MDOC PD 05.03.150.  Thus, the CFA Special Activities Coordinator's role in this regard, as well as the Warden's, was not or should not have been a mystery to plaintiff, and plaintiff had the information he needed to grieve RRF Warden Booker and the MDOC CFA Special Activities Coordinator by title in the August 20, 2010 grievance.

**i.      Even if plaintiff was not aware in August 2010 that Martin had been consulted, plaintiff is still required to exhaust his claims against Booker and Martin before litigating them in this Court:**  To be sure, the Court recognizes plaintiff's claim that Booker did not forward plaintiff's request to Martin (*see*, *i.e.*, Doc. Ent. 31 ¶ 25), which may result in an argument by plaintiff that he was not aware at the time of his August 2010 grievance that Martin had been consulted.

However, plaintiff's March 12, 2012 claims for relief against Martin allege that Martin "received a request from Plaintiff . . . but denied receiving the request[;]" "received a request from Plaintiff . . . and refused to approve [it][;]" and "did not fairly consider Plaintiff's religious

---

[12]In the current (July 26, 2013) version of MDOC PD 05.03.150 only two (2) paragraphs mention fasts and feasts.  ¶ J- the only paragraph which specifically mentions Ramadan - explains one of the Special Activities Coordinator's roles with regard to MDOC Recognized Religious Groups (¶¶ I-L).  ¶ VV explains one of the Special Activities Coordinator's roles with regard to Religious Menus/Meals (¶¶ OO-WW).

request[.]" Doc. Ent. 31 ¶¶ 29-31.[13]  As noted above, RRF-10-08-00655-20e does not exhaust plaintiff's administrative remedies with regard to his claims against Booker and Martin.

2. **If the Court agrees that plaintiff has not exhausted his administrative remedies with regard to his claims against RRF Warden Booker and MDOC CFA Special Activities Coordinator Martin, then it need not address the other arguments raised by the parties cross-motions.**

As noted above, defendants Booker and Martin's April 5, 2013 motion also raises four (4) other arguments:  Washington's failure to show Booker's personal involvement as required by 42 U.S.C. § 1983; Washington's failure to show a First Amendment violation; Eleventh Amendment and qualified immunities; and the mootness of plaintiff's claims for injunctive and declaratory relief.  *See* Doc. Ent. 59 at 12-21.

Also, plaintiff's April 25, 2013 motion for summary judgment, which is divided into several sections, makes several arguments.  *See* Doc. Ent. 61 at 1-11 (Motion for Summary Judgment); Doc. Ent. 61 at 12-13 (1st Argument); Doc. Ent. 61 at 14-15 (Statement of Facts); Doc. Ent. 61 at 16-17 ("Defendants['] Violations of the 14th & 1st Amendment[s] of the U.S. Con[stitution]"); Doc. Ent. 61 at 19-20 (Statement of Facts and Evidence from KJV); and Doc. Ent. 61 at 30-32 (2nd Argument).

---

[13]In fact, Martin was contacted by Caldwell.  According to the April 13, 2011 affidavit of former defendant Caldwell, she forwarded plaintiff Washington's August 9, 2010 request to be placed on the Ramadan fast line (Doc. Ent. 1 at 6) to CFA Special Activities Coordinator Michael Martin, and the response informed Caldwell's August 10, 2010 response (Doc. Ent. 1 at 7).  Doc. Ent. 17-2 ¶¶ 5, 9 & 10.

Furthermore, on April 25, 2011, Martin attested that "[t]he Protestant faith does not require participation in the Ramadan fast[,]" and "[RRF] Chaplain Carron Caldwell did contact me [Martin] regarding Washington's request and I [Martin] informed her that since Washington's religious preference wasn't Muslim, he could not participate in the Ramadan fast."  Doc. Ent. 17-3 ¶¶ 6, 11.

However, if the Court agrees that plaintiff has not exhausted his administrative remedies with regard to his claims against RRF Warden Booker and MDOC CFA Special Activities Coordinator Martin, then the Court need not address the merits of plaintiff's claims against Booker and Martin; whether plaintiff's claims against Booker and Martin are barred by Eleventh Amendment or qualified immunities; or whether certain of plaintiff's claims against Booker and Martin are moot.

### III.     NOTICE TO PARTIES REGARDING OBJECTIONS:

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sullivan*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Federation of Teachers Local 231, American Federation of Teachers, AFL-CIO*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

Date: February 18, 2014                        s/Paul J. Komives
                                                      PAUL J. KOMIVES
                                                      UNITED STATES MAGISTRATE JUDGE

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing Order was served upon counsel of record via the Court's ECF System to their respective email addresses or First Class U.S. mail to the non-ECF participants on February 18, 2014.

                                                                    s/ Kay Doaks
                                                                    Case Manager